UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JASON ANDREW KEEL, | |
| Plaintiff, | |
| v. | CAUSE NO.: 3:19-CV-862-PPS-MGG |
| ROBERT CARTER, JR., et al., | |
| Defendants. | |

OPINION AND ORDER

Jason Andrew Keel, a prisoner without a lawyer, is proceeding on an injunctive relief claim against Robert Carter, Jr., as the Commissioner of the Indiana Department of Correction, to obtain the protective measures to which he is entitled under the Eighth Amendment. ECF 4. Along with his complaint—which alleges that fellow inmates at the Miami Correctional Facility (MCF) were targeting him for violence due to debts and his reputation as a snitch—he filed a motion for injunctive relief asking to be placed back in administrative segregation or protective custody status until his transfer out of MCF was completed. ECF 3. When the Commissioner subsequently notified the court that Keel had been transferred to the Branchville Correctional Facility (BCF), I deferred ruling on the motion until Keel had an opportunity to advise whether this transfer adequately addressed his immediate safety concerns. ECF 13. Because Keel responded that he remained in danger despite the transfer and provided some evidence in support of that contention (ECF 15, 21), I referred the case to United States Magistrate Judge

Michael G. Gotsch, Sr., to conduct an evidentiary hearing and to prepare a report and recommendation on the motion for a preliminary injunction. ECF 22.

On November 27, 2019, Judge Gotsch conducted the hearing and heard testimony from Keel, Kelly Hubert, a unit manager at BCF, and Jack Hendrix, the executive director of classifications for the Indiana Department of Correction. ECF 31. Afterwards, Judge Gotsch granted the parties leave to supplement the evidentiary hearing. The Commissioner presented additional testimony from Kelly Hubert in the form of an affidavit (ECF 34),[1] while Keel filed another motion for preliminary injunctive relief requesting immediate transfer to any other facility due to fears of retaliation from staff members (ECF 35).

Judge Gotsch then issued a report and recommendation, finding that the inmates at BCF do not pose a substantial risk of harm to Keel whether he remains in restrictive housing or is released into the general population, and, as such, he recommended that the motion for injunctive relief (ECF 3) be denied with leave to refile if necessary when or if he is transferred to another facility. ECF 38. Judge Gotsch also found that the record contained insufficient evidence to determine whether inmates in another facility would pose an immediate and substantial risk of harm to Keel; he found that the evidence suggesting such a threat was speculative and nonconcrete. *Id*. In making these findings, Judge Gotsch acknowledged Keel's history of protective custody and transfers due to threats from other inmates; however, he relied heavily on the undisputed fact

---

[1] This document was docketed as a motion to supplement the record. ECF 34. The motion will be granted to the extent it requests permission to submit the additional evidence.

that Keel is currently not in danger from other inmates while in restrictive housing at BCF. *Id*. He also pointed to Keel's requests to be released from restrictive housing and into the general population at BCF—which is supported both by admissions during his testimony when being examined by counsel and by the supplemental documents submitted by the Commissioner—as evidence that Keel's claims of being threatened by inmates upon his arrival at BCF are unreliable. *Id*. Judge Gotsch noted that, although Keel maintains that his fear of a transfer to a more violent facility motivated these requests, his demand to be reclassified to a higher security level (which would likely result in such a transfer) along with his correspondence to correctional officials indicating his primary concerns revolved around the deprivation of privileges associated with restrictive housing, undermines Keel's position. *Id*. Finally, Judge Gotsch credited the attempts of the Indiana Department of Correction to address Keel's security concerns throughout the years, including Director Hendrix's consideration of why BCF was a good option for Keel at the time he was transferred. *Id*.

Keel has now filed a timely objection to the report and recommendation. ECF 39. Parties may file objections to reports and recommendations within fourteen days. Fed. R. Civ. P. 72(b)(2). In resolving these objections:

> The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Keel raises five separate objections. Before delving into these objections, however, I must address the scope of the referral and the ultimate issue currently before me. I referred this case to Judge Gotsch to conduct an evidentiary hearing and to prepare a report and recommendation on the original motion for preliminary injunction that was filed in September of 2019. That motion—along with the complaint—requests protection from other inmates. In particular, recall that Keel was concerned with being physically assaulted, extorted, robbed, and threatened by other inmates due to his drug debts and reputation as a snitch. As noted by Judge Gotsch, Keel later did a 180 and sought injunctive relief for protection from *correctional staff* at BCF. In his second submission Keel asserted that he is being retaliated against for allegedly making threatening statements towards employees of Wexford that resulted in disciplinary proceedings. These later voiced concerns are materially different than those raised in both Keel's original motion and this caused Judge Gotsch to be skeptical of Keel. To the extent Keel now seeks injunctive relief related to possible retaliation by correctional staff, that motion will be denied. *See Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("Thus, a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

Moving on to Keel's specific objections to Judge Gotsch's report and recommendation, I find that they are without merit. Keel begins by objecting to the

4

inclusion of a statement he made that resulted in a conduct report, related disciplinary proceedings, and his placement in administrative restrictive housing at BCF pending transfer to a different facility. Specifically, Judge Gotsch notes that Keel admitted he told medical personnel at BCF, "Man, I'd like to get a gun and shoot up Wexford employees and the doctor," although he explained he was not referring to the medical staff present. ECF 38 at 3. Keel wants this statement and any reference to it in the record stricken—he filed a separate motion to strike (ECF 40) in addition to his objection. Keel argues that striking this testimony is appropriate because he protested this line of questioning during the hearing and because he is currently appealing the disciplinary proceedings and intends to file a 28 U.S.C. § 2254 petition. Yet Keel does not deny making the statement, and his written grievances indicate that he has already pled guilty to the related conduct report. *See* ECF 34-2 at 2, 11.[2] In all events, whether Keel's appeal is successful—and whether Keel is indeed guilty of the charged conduct offense—has little bearing on the ultimate question of whether he is currently in danger such that I need to issue a preliminary injunction to prevent him from being harmed by other inmates. The undisputed facts remain: (1) officials placed Keel in administrative restrictive housing at BCF; and (2) he is not in danger from other inmates while there. Why they did so does not change the determination of whether a preliminary injunction is warranted under these circumstances. What's more, there is no basis for striking this statement in the instant civil proceeding when all it does is duplicate information that

---

[2] These grievances were submitted by the Commissioner as supplemental evidence following the hearing.

has already been admitted as evidence in a different proceeding and it provides context for the housing determinations made by the officials at BCF.

Keel also objects to the phrasing in Judge Gotsch's order regarding the lack of privileges afforded to inmates in administrative restrictive housing. In his report and recommendation, Judge Gotsch notes that Keel testified he is "deprived of privileges afforded to the general population, including commissary, tablet devices, a wider range of clothing, and more access to telephones." ECF 38 at 3. Keel claims that he only testified to those things in a general sense as to the practices at BCF, "[n]ot that I did not have them." ECF 39 at 2. But the correspondence written to correctional officials by Keel, which was provided to the court by the Commissioner, supports Judge Gotsch's interpretation of Keel's testimony—that is to say, Keel's primary reason for wishing to be removed from restrictive housing and placed into the general population at BCF[3] centered on the lack of privileges and his perception of being punished rather than any specific safety concerns. *See* ECF 38 at 3, 6-7; *see also* ECF 34-2. Combined, this evidence undermines Keel's credibility regarding his claims that inmates at BCF have threatened him and that he only requested to remain at BCF in general population out of fear of being transferred to a more violent facility. Accordingly, I agree with Judge Gotsch's interpretation of the testimony in question and note that, on this record, it can't be said

---

[3] Keel does not dispute that he sent department officials a letter on November 3, 2019, asking to remain at BCF and be placed in the general population. *See* ECF 38 at 3; *see also* State's Exhibit B, entered into evidence at the hearing.

6

that inmates would pose a substantial risk of harm to Keel if he is released into the general population at BCF.

Keel's third and fourth objections deal with his interpretation of Director Hendrix's testimony. Keel takes issue with Judge Gotsch's determination that Director Hendrix meaningfully considered Keel's best interests when he was transferred to BCF. Keel argues that Director Hendrix had "nothing to do with which prison I went to" and that the transfer could have been to the Westville Correctional Facility if a bed in protective custody was available there. ECF 39 at 2–3. Contrary to Keel's assertions, a review of the rough transcript from the hearing shows that Director Hendrix specifically testified that he made the final decision to transfer Keel from MCF to BCF, and he provided detailed reasons as to why BCF would be a good fit for Keel. The fact that staff at MCF recommended transfer for monitoring/protective custody and noted that the transfer was pending as of July 16, 2019 (*see* ECF 1-1 at 5–7), does not, as Keel suggests, serve to undermine Director Hendrix's testimony regarding his review and consideration of Keel's placement needs. The bottom line remains—Keel was transferred from MCF to BCF, Director Hendrix was instrumental in that decision, and Keel is not currently in danger there. Thus, Keel's objections are unfounded.

Finally, Keel objects generally to the discussion about his requests for protective custody stating, "they are saying I did not ask for P.C. And that because I did not ask for it, then I should not get it." ECF 39 at 3. However, Judge Gotsch's report and recommendation states that Keel has not requested protective custody *since arriving at BCF*, not that he never requested it. Following the hearing, the Commissioner submitted

7

supplemental documentation establishing that no new written requests for protective custody have been found in either the physical or electronic files maintained by BCF since Keel's arrival there. *See* ECF 34-1; ECF 34-2. Rather, as outlined above, Keel has requested to be placed back into the general population at BCF. He has provided no evidence to the contrary in his responses.[4]

In any event, the question before me is not whether Keel must be permanently placed in protective custody at some undetermined point in the future but, rather, whether Keel is currently in danger of suffering irreparable harm—specifically at the hands of other inmates—prior to the ultimate resolution of this lawsuit without immediate court intervention. Judge Gotsch's report and recommendation summarizes the relevant evidence and analyzes it pursuant to the correct standard. His findings that Keel is not currently in danger from other inmates while in administrative restrictive housing at BCF and that inmates will not pose a substantial risk of harm to Keel if he is released into general population at BCF are well-supported. Moreover, I agree that the record contains insufficient evidence to warrant preliminary injunctive relief based on a possible transfer to another facility. It's true that Keel has presented documents suggesting he may be transferred to the Westville Correctional Facility at some point in the future and that he had complained about threats of violence from other inmates

---

[4] In fact, in his second motion for preliminary injunctive relief, which was filed after the evidentiary hearing, Keel states, "[t]here was no need to request for protective custody while in RHU here at BCF." ECF 35-1 at 4.

8

there roughly two years ago (*see generally* ECF 21, ECF 21-1).[5] However, it remains to be seen where Keel would be placed within that facility (if he is indeed transferred), and the risk of being subjected to harm by inmates who may or may not even be located there anymore is speculative and nonconcrete. *See Brown v. Budz*, 398 F.3d 904, 911, 913 (7th Cir. 2005) (a "generalized risk of violence" is not enough; rather, substantial risks are ones that are "so great that they are almost certain to materialize if nothing is done"); *see also Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) ("The conditions presenting the risk must be sure or very likely to cause needless suffering, and give rise to sufficiently imminent dangers.") (cleaned up). Thus, based on the record before me, I must deny Keel's request for preliminary injunctive relief.

Accordingly, the court:

(1) GRANTS the motion to supplement the record to the evidentiary hearing (ECF 34);

(2) DENIES the motion to strike (ECF 40);

(3) OVERRULES the objections to the report and recommendation (ECF 39);

(4) ADOPTS the report and recommendation (ECF 38) in its entirety;

(5) DENIES the original motion for a preliminary injunction (ECF 3) with leave to refile, if necessary, upon Jason Andrew Keel's transfer to a different facility;

(6) DENIES the second motion for a preliminary injunction (ECF 35); and

(7) DENIES AS MOOT the motion to rule (ECF 45).

---

[5] Keel was transferred out of the Westville Correctional Facility in March of 2018 and has not returned since then. ECF 21-1 at 110.

SO ORDERED on January 27, 2020.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT