UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JASON ANDREW KEEL,

    Plaintiff,

    v.                              CAUSE NO. 3:19-CV-862-PPS-MGG

ROBERT CARTER, JR., et al.,

    Defendants.

OPINION AND ORDER

Jason Andrew Keel, a prisoner without a lawyer, filed a motion for a preliminary injunction. In the amended complaint, Keel alleges that he has been targeted by his fellow inmates for violence due to debts and his reputation as a snitch at various facilities maintained by the Indiana Department of Correction. ECF 48. He currently proceeds on an Eighth Amendment failure to protect claim against nineteen defendants and on an injunctive relief claim to obtain the protective measures to which he is entitled under the Eighth Amendment. ECF 58. He asks for transfer to a protective custody unit.

In the motion for a preliminary injunction and in his reply brief, Keel asserts that he has been subjected to threats, extortion, and assault in the Westville Control Unit. ECF 94, ECF 110. He alleges that, on March 11, 2020, Inmate Slack used a bottle and a pen tube to spray bodily waste on him as correctional staff escorted him to the shower. ECF 94 at 2; ECF 110 at 2. Inmate Ellis worked together with Inmate Slack to extort cash payments from Keel under threat of further assaults. ECF 110 at 3. Keel's mother made

the payments, but correctional staff disciplined Inmate Ellis after Keel reported the extortion through an internal affairs hotline. *Id.* at 6. Specifically, correctional staff charged Inmate Ellis with violating Indiana Department of Correction Offense 100 for violating a federal, State, or local law. *Id.* In June 2020, Keel moved to a cell next to Inmate Rhoades, who worked with Inmate Ellis to continue the extortion scheme by spraying bodily waste through the venting system with a makeshift device and by beating on the wall to prevent Keel from sleeping. *Id.* at 7; ECF 110-1 at 1. When he reported it, correctional staff did not move Keel but responded by searching the cells of Inmate Rhoades and Keel four times per week. ECF 110-1 at 6.

In response, the Warden provided the affidavits of Unit Team Manager Sonnenberg, who works in the Westville Control Unit, and Investigator Burkett, who has reviewed the files of recent investigations conducted at Keel's request. ECF 105-1; ECF 105-2. According to the Warden, correctional staff have examined the cells and the pipe chase and determined that Inmate Rhoades would not be able to spray bodily waste into Keel's cell because the cells are separated by a metal barrier and the vents are not connected. ECF 105-1 at 4; ECF 105-2 at 2. Unit Team Manager Sonnenberg personally examined Keel's cell and observed some water on the floor but no odors associated with bodily waste. ECF 105-2 at 2. He also observed Keel's lack of concern with cleaning his cell. *Id.* Though Keel could submit a request for protective custody, he has not done so with respect to Inmate Rhoades. *Id.* at 2-3. In reply, Keel accuses Unit Team Manager Sonnenberg of lying for stating that Keel had not submitted any requests for protective custody, attaching a request, dated August 28, 2020 -- two weeks

2

*after* Unit Team Manager Sonnenberg signed and submitted his affidavit. *Id.* at 4; ECF 110 at 4; ECF 110-1 at 8, 10.

Keel is expected to remain in restrictive housing until his release from the custody of the Indiana Department of Correction. ECF 105-1 at 5. There, inmates are cuffed and escorted by correctional staff one-by-one each time they leave their cells. *Id.* at 6. Inmates eat meals in their cells, and showers and recreational time are offered as individual activities. *Id.*; ECF 105-2 at 3-4. Inmates in a protective custody unit are not subject to these restrictions. ECF 105-1 at 6. Since the beginning of the year, Keel has been found guilty of ten disciplinary offenses, including threatening, disorderly conduct, bribery, and refusing to comply with an order. *Id.* at 5.

The purpose of preliminary injunctive relief is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 726 (7th Cir. 1998) (quotation omitted). "In order to obtain a preliminary injunction, the moving party must show that: (1) they are reasonably likely to succeed on the merits; (2) no adequate remedy at law exists; (3) they will suffer irreparable harm which, absent injunctive relief, outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) the injunction will not harm the public interest." *Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 619 (7th Cir. 2004).

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). "[P]rison officials have a duty to protect prisoners from violence at

3

the hands of other prisoners." *Id.* at 833 (quotation omitted). "[I]n order to state a section 1983 claim against prison officials for failure to protect, [a plaintiff] must establish: (1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety. *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010) (quotation marks and citation omitted). Deliberate indifference is a high standard, and is "something approaching a total unconcern for [a prisoner's] welfare in the face of serious risks," or a "conscious, culpable refusal" to prevent harm. *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks and citation omitted).

To start, the record contains minimal evidence that other inmates pose a substantial risk of harm to Keel or that he is likely to suffer irreparable harm in restrictive housing. He represents that Inmate Slack assaulted him with bodily waste on his way to the shower, but this was a single incident that occurred six month ago. He further represents that Inmate Rhoades sprays bodily waste into his cell through the vent and bangs on the walls to prevent him from sleeping. However, correctional staff have confirmed that spraying bodily waste from cell to cell is not physically possible and have been unable to substantiate Keel's report despite conducting cell searches four times per week. Additionally, the allegation that Keel is able to sleep only when Inmate

4

Rhoades sleeps or when Rhoades chooses to not bang on the walls describes an unpleasant condition, but the inability to sleep throughout the day does not rise to the level of irreparable harm warranting a preliminary injunction.

Next, the record reflects that, while correctional staff have not moved Keel to a protective custody unit, they have taken substantial measures to ensure his safety. According to Keel, correctional staff responded to his reports of an extortion scheme by charging Inmate Ellis with a high-level disciplinary offense. They have also investigated Keel's reports regarding Inmate Slack by examining the vent structure and by repeatedly searching the cells of Keel and Inmate Slack. These measures are in addition to the baseline security measures used in the Westville Control Unit, which include handcuffs and individual escorts from correctional staff any time inmates are out of their cell as well as individual cells, showers, and recreational time. On this record, I cannot find that correctional staff are acting with deliberate indifference to Keel's safety or that he will likely suffer irreparable harm absent injunctive relief.

With respect to the competing and public interests, unnecessary intrusions into the management of prisons are generally disfavored. *See* 18 U.S.C. § 3626(a) (prison-related injunctions must be necessary to remedy the violation and narrowly tailored); *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (quotation omitted) ("Prison officials have broad administrative and discretionary authority over the institutions they manage."). What's more, it is difficult to ignore the fact that Keel has accrued a substantial disciplinary history, including several counts of threatening behavior, and that an order compelling protective custody could thus undermine the State's legitimate

5

interest in maintaining discipline and protecting staff and other inmates from violence. After considering the relevant factors, I find that Keel has not demonstrated that he is entitled to injunctive relief.

For these reasons, the court finds a hearing is unnecessary and DENIES the motion for a preliminary injunction (ECF 94).

SO ORDERED.

ENTERED:  September 9, 2020.

      /s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT